UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
MAY 13 2010

******************************************************
\*
FRED CORNELL CONE,            \*    CIV. 06-4128
                              \*
   Plaintiff,                 \*
                              \*    MEMORANDUM OPINION
   -vs-                       \*    AND ORDER GRANTING MOTION
                              \*    FOR SUMMARY JUDGMENT
RAINBOW PLAY SYSTEMS, INC.,   \*
                              \*
   Defendant.          .      \*
                              \*
******************************************************

Defendant Rainbow Play Systems, Inc. ("Rainbow") has moved for summary judgment on Plaintiff Fred Cornell Cone's age discrimination claim. Rainbow briefed the issues, Cone responded to Rainbow's Statement of Material Facts, and the Court has received and reviewed the supplemental argument and materials submitted by Cone in response to this Court's December 16, 2009, Memorandum Opinion and Order. For the reasons stated below, the motion for summary judgment will be granted.

## BACKGROUND

Plaintiff alleges he was wrongfully discharged from his employment with Rainbow because of his age. Rainbow claims Plaintiff's employment was terminated after Plaintiff was involved in various incidents with co-workers, culminating in a physical altercation at the workplace. Viewing the facts in a light most favorable to Plaintiff, the record establishes the following.

Rainbow hired Plaintiff when Plaintiff was just a few days short of his 61st birthday. In August 2004, Plaintiff and a co-worker, Joe Paulsen ("Paulsen"), were involved in a disagreement regarding a fan. Plaintiff and Paulsen worked at adjacent machines. Paulsen had a fan. When Paulsen left the work area, Plaintiff turned Paulsen's fan toward himself. When Paulsen returned to the work area he yelled obscenities at Plaintiff for touching the fan. Plaintiff went to their

supervisor and reported Paulsen's behavior as "postal." Plaintiff's supervisor, John Stirling, investigated this disagreement but no disciplinary action was taken.

On November 17, 2004, Plaintiff and another employee, Billy, were pulling pranks on each other. Plaintiff's supervisor verbally warned both employees that the horseplay needed to stop. Then, in early February 2005, Plaintiff and Billy were involved in further horseplay. Plaintiff claims that Billy threw Plaintiff's coffee out the side door, so Plaintiff placed his push broom on top of the stack of wood Billy was working on. Billy then threw a piece of lath at Plaintiff. Billy claimed he threw the lath because Plaintiff threw a broom head at him. Another co-worker also told the supervisor that Plaintiff threw a broom head at Billy. After this incident, Plaintiff's supervisor again spoke with Plaintiff and Billy, indicating that if he saw anything else being thrown the employee would be written up. On February 3, 2005, the saw room manger, Brad Lhotak, also verbally warned Plaintiff and Billy that if they threw anything else they would be written up.

Plaintiff testified in his deposition about an incident that occurred later in February of 2005 when he and Paulsen had the work-related disagreement which led to Plaintiff's termination. Plaintiff and three other Rainbow employees were working in a separate building called the "saw room." Plaintiff was stacking something on a pallet in the saw room. From approximately sixty to seventy feet away, Paulsen yelled at Plaintiff to hurry and bring over some blocks of wood. Plaintiff hollered back that he would and started stacking the wood on a pallet. Paulsen then told Plaintiff to just bring him an armful of the blocks, and Plaintiff responded that he would just drop half of them if he did it that way. Plaintiff said he would do it the most efficient way. Plaintiff testified that while he was stacking blocks on the pallet, Paulsen came behind Plaintiff, grasped him by the neck and lifted him up. Plaintiff claims he said words to the effect of "get your f***ing hands off me." Another co-worker intervened and separated the men. The incident was reported to have occurred at 9:15 a.m., and immediately after the report the saw room manager arrived and took a written statement from Paulsen, which provides:
> Fred was asked to bring in finger joint blocks to use as spacers on pallet he was told by all 3 of us to do this & he wasn't doing it and he was told again & he keep fooling around & I went to tell him again & he started yelling at me we then got into an

argument at that point things got kind of messy I know I grabbed him at some point & at about that same time Jared came in & broke us apart.

Paulsen's employment was terminated immediately due to his behavior which violated Rainbow's policy against workplace violence. At the time of his termination, Paulsen was 33 years old.

After the incident, Plaintiff met with the saw room manager. Plaintiff told the manager that Plaintiff had no intention of reporting the incident to the police, and that he did not feel it was necessary to terminate Paulsen's employment. Plaintiff also signed a performance agreement on that date. The performance agreement, states, in pertinent part:

> This will be considered a written notice that your performance does not meet the requirements of your assigned position. Your current behavior and performance has created a hostile work environment. Engaging in behavior that would interfere with another employee or engaging in behavior that would create a lack of harmony among employees is unacceptable and works against company goals and initiatives. This includes not following directives.
>
> I understand that if I am not in compliance with this agreement, that I will voluntarily resign my position.
>
> This Performance Agreement will be in place indefinitely.

Plaintiff did not agree with being placed on a performance agreement, but his supervisor and manager told him it was necessary. Plaintiff thought he would be on the performance plan for thirty (30) days,[1] but Plaintiff's supervisor and manager did not make any promises that he would remain employed from the date of the performance agreement on.

Rainbow continued investigating the incident. Hand-written statements pertaining to this investigation were obtained from the manager, Brad Lhotak, and the other two Rainbow employees

---

[1]Sometime after his deposition was taken in this case, Plaintiff insisted that there was a written attachment to the performance agreement specifying that the agreement would be in place for thirty days. Rainbow denies the existence of such a document.

3

who were present at the time of the altercation, Randy Sween, and Jared Bertelson. The manager's statement indicates:

> ... Fred was told to go get pallet blocks.
> Then Jared heard "Fred don't ever put your f***ing hands on me again." Jared turned around and Joe had his hands around Freds throat!
>
> Fred said that Joe told him to get the blocks and he told him he was not his boss, Jared was his boss and he didn't have to listen to him.
>
> I talked to Joe Paulson and he said it was his fault I snapped. I asked him why? He said that Fred was being Fred. Very annoying. He kept pushing my buttons. I snapped I'm sorry!

Jared Bertelson's statement says:

> I was working in the adjacent room when I told Fred to get some blocks for the bundles. I started bonding a bundle. I then heard yelling "I heard Joe yell Fred Don't put your f***ing hands on me." I went around the corner into the next room and saw Joe and Fred with Joes hands around Freds neck. I imeediately [sic] separated them. And called Brad. Brad came over we set Fred down and his side of the story then got Joes then called Pam.

In his statement, Randy Sween said, "This is what I heard: Don't you ever touch me again Fred." Although Plaintiff questions the ability of Bertelson and Sween to have heard anything, they both said in their hand-written statements that they heard Paulsen yelling at Plaintiff to not touch Paulsen again, or words to that effect.

Plaintiff admitted in his deposition that he had received and reviewed a copy of Rainbow's Employee Manual when he was working for Rainbow. He signed a receipt and acknowledgment of the manual which was kept in his personnel file. Rainbow's Employee Manual sets Standards of Conduct, including the following:

> Whenever people gather together to achieve goals, some rules of conduct are needed to help everyone work together effectively and harmoniously. By accepting employment with us, you have a responsibility to Rainbow Play Systems and to your fellow employees to adhere to certain rules of behavior and conduct.

> We expect each person to act maturely and responsibly at all times. Some of the more obviously unacceptable activities are noted below, although this list is not exhaustive.
> . . .
> - Careless action, which could endanger the life or safety of another person.
>
>   . . .
> - Criminal conduct, threats of violence toward anyone at the Company, on Company premises or when representing Rainbow Play Systems. This includes the threat, intimidation or coercion of other employees or individuals you are relating with because of Company business, which occurs off premises.
>
>   . . .
> - Engaging in behavior that would interfere with another employee or his or her work, willfully restricting work output or encouraging the others to do so.
>
> - Horseplay.
>
> - Unsatisfactory or careless work.

After Rainbow's investigation of the incident between Plaintiff and Paulsen, with the inconsistent statements about Plaintiff's behavior, Rainbow decided that Plaintiff should also be released from employment because it appeared he may have had physical involvement in the altercation. The following day, Rainbow terminated Plaintiff's employment. Plaintiff was asked to go to Rainbow's human resources department. Rainbow's human resources officer explained to Plaintiff why he was there and that there were concerns. Plaintiff's manager offered him an opportunity to resign. When Plaintiff declined to resign, they advised him that he was terminated. He was 62 years old at the time of his termination. The person who hired Plaintiff, Kandy Barthel, also was involved in the decision to terminate his employment.

Plaintiff testified in his deposition that he did not believe anyone was hired to replace him. In response to Defendant's Statement of Material Facts, however, Plaintiff claimed that a younger, unidentified employee took over Plaintiff's work after Plaintiff's employment ended, but Plaintiff has no evidence in support of this claim.

Plaintiff also testified that he believes no act of age discrimination occurred against him until he was terminated, which action he claims "voided" his performance agreement. Plaintiff claims

other younger employees had the opportunity to void their negative behavior by finishing their performance agreements, while he was denied such an opportunity. During his deposition, Plaintiff said he did not actually know of any such younger employees. When questioned about his claim, Plaintiff answered as follows:

> Q. ... tell me what facts you are aware of that would support a claim that you were being treated differently on the basis of your age.
>
> A. Okay. No act of age discrimination occurred until the moment the performance agreement contract that we all signed, and I was in compliance with, till that moment on the second day of compliance with that contract, the 24th of February, 2005, was voided. When that happened, other younger employees, who have had the opportunity to complete or void by negative behavior themselves regarding their contracts, those younger employees were allowed to go forward and finish their performance agreement. My point of view to the EEOC was that by not being allowed to do what other younger employees were allowed to do I was being denied an opportunity that I should not have been denied.
>
> Q. And tell me what younger employees were allowed to complete their performance agreement, that you know of.
>
> A. I know of no employee, as I do not have the company records, other than the one or more employees that I believe your work history here, that is long, in Brookings exists somewhere in the files of Rainbow. And if, in fact, it doesn't, then it occurs to me that a definition that I came by about a contract is an agreement, and I just wrote it down so I wouldn't forget, that creates obligations – any agreement that creates obligations is a contract, and I had a right to that contract.
>
> Q. And just back up a little bit. As you sit here today, you don't have firsthand knowledge of any specific younger employee who received a performance agreement and was allowed to complete the performance agreement or void it out by their behavior, correct?
>
> A. I have the names of people who I suspect have completed, but I'm not holding that information yet so –
>
> Q. And you don't know at this time?
>
> A. So I don't know, no.

In response to Rainbow's motion for summary judgment Plaintiff said that, through discovery, he had obtained a copy of a performance agreement signed by a younger employee who was treated more favorably by being allowed to "complete" the agreement. Plaintiff submitted a Performance Agreement signed by Jeff Townsend on May 17, 2004. That Agreement states:

> Jeff Townsend is being placed on a 6-month performance agreement. Starting May 17th 2004 and ending November 17th 2004. Jeff must follow all rules or he will voluntarily resign from his position at Rainbow Play Systems.
> Any disrespect to any Manger, Supervisor, Operator, or Fellow employee will result in voluntary termination. Any out breaks of temper or cursing at a fellow employee or superior will result in voluntary termination. Any acts of unwillingness to do assigned tasks will result in voluntary termination.
> I Jeff Townsend agree to all terms written above.

Plaintiff asserts that this Performance Agreement demonstrates Rainbow treated Plaintiff, the older employee, differently in terms of employment than the younger employee, Jeff Townsend.[2]

Plaintiff also submitted a copy of his annual performance evaluation for the period of January 1, 2004, through December 31, 2004, and copies of documents related to his request for and award of unemployment benefits after his termination. According to Plaintiff, this is further evidence that he was fired because of his age.

Rainbow argues it is entitled to summary judgment on Plaintiff's claims because he was terminated for misconduct and there is no showing the termination was a mere pretext for age discrimination against Plaintiff.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[2]Plaintiff does not provide any proof of Jeff Townsend's age, or any other evidence of his assertions regarding Rainbow's treatment of Townsend.

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). These inferences, however, must be "reasonable inferences - - those that can be drawn from the evidence without resort to speculation. *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 658 (8th Cir. 2001) (quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001)). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Only disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment." *P.H. v. Sch. Dist. Of Kansas City*, 265 F.3d at 658 (quoting *Anderson*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Bass v. SBC Commc'ns. Inc.*, 418 F.3d 870, 873 (8th Cir.2005) (quoting *Anderson*, 477 U.S. at 252.

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is unlawful under the Age Discrimination in Employment Act ("ADEA") for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's age . . . ." 29 U.S.C. § 623(a)(1). "A plaintiff may establish [a] claim of intentional age discrimination through either direct evidence or indirect evidence." *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009) (citation omitted). In cases involving indirect evidence, as here, the Eighth Circuit traditionally has applied the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See King*, 553 F.3d at 1160. Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of age discrimination. *See Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its conduct. *Id.* If the defendant satisfies its burden, the plaintiff must show that the proffered reason was pretext for unlawful discrimination. *Id.*

Last summer, the Supreme Court decided *Gross v. FBL Fin. Servs., Inc.* --- U.S. ----, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), holding that a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." *Id.* at 2352. The Court explained that the ADEA does not authorize discrimination claims based on mixed motives, i.e. claims that adverse employment actions occurred "because of both permissible and impermissible considerations." *Id.* at 2347. In so holding, the Supreme Court noted that the burden-shifting test from *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), does not apply to ADEA claims. *Id.* at 2351-52. Under *Price Waterhouse*, after a plaintiff has produced some evidence that age was a motivating factor in the employer's decision, the burden shifts to the employer to show that it would have taken the same action regardless. 490 U.S. at 258. In discussing *Price Waterhouse*, the Supreme Court in *Gross* noted that the "Court has never held that this burden-shifting framework applies to ADEA claims[,][a]nd, we decline to do so now." 129 S.Ct. at 2349. Because *Gross* analyzed only the *Price Waterhouse* burden-shifting test, it is unclear what effect *Gross* had on the *McDonnell Douglas* test. The Supreme Court noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* ... is appropriate in the ADEA context." *Id.* at 2351 n. 2. The Eighth Circuit has not decided the issue³ but many other

---

³In an ADEA case which was decided after *Gross*, the Eighth Circuit laid out the "but-for" standard as set forth by *Gross*. *See Baker v. Silver Oak Senior Living Management Co.*, 581 F.3d

9

courts have held that, while *Gross* now requires an ADEA plaintiff to demonstrate that discrimination was the but-for cause of the adverse employment action, the *McDonnell Douglas* framework remains instructive on summary judgment in ADEA cases. *See, e.g., Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 447 n. 2 (1st Cir. 2009); *Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) (applying *McDonnell Douglas* without discussion); *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir.2009); *Martino v. MCI Communications Services, Inc.*, 574 F.3d 447, 452 (7th Cir.2009) (applying *McDonnell Douglas* without discussion); *Roberts v. USCC Payroll Corp.*, 635 F.Supp.2d 948, 962 n. 2 (N.D.Iowa 2009); *Woehl v. Hy-Vee, Inc.*, 637 F.Supp.2d 645, 651 (S.D.Iowa 2009).

Rainbow does not argue that the *McDonnell Douglas* analysis no longer applies after the Supreme Court's decision in *Gross*. In fact, Rainbow cites to the cases using the *McDonnell Douglas* framework in the wake of *Gross*, and Rainbow applies the test in its briefing of the issues in this case. In light of the legal authority cited above and Rainbow's use of the test, the Court will apply the *McDonnell Douglas* analysis for purposes of deciding whether Rainbow is entitled to summary judgment.

1. Plaintiff's Prima Facie Case

In order to establish a prima facie case of age discrimination, Plaintiff must show that: (1) at the time of his termination he was over 40 years of age; (2) he was otherwise qualified for the position he held; (3) he was discharged from employment; and (4) he was replaced by a younger employee. *See Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 872 (8th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)). Rainbow concedes that Plaintiff can establish the first three elements of his prima facie case of age discrimination. Rainbow contends, however, that Plaintiff fails to establish the fourth element. It is true that Plaintiff has failed to present any evidence that a younger person was hired to take his place, but the Court bears

---

684 (8th Cir. 2009). *Gross* was decided after the *Baker* case was fully submitted to the Eighth Circuit. *See id.* at 688. It is not clear, but it appears that the Eighth Circuit reviewed and analyzed the record in *Baker* using the *McDonnell Douglas* burden-shifting analysis.

in mind both that Plaintiff is proceeding pro se and that "[t]he *McDonnell Douglas* framework was 'never intended to be rigid, mechanized, or ritualistic.'" *Hammer v. Ashcroft*, 383 F.3d 722, 726 (8th Cir. 2004) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)); *see also Hindman v. Transkrit Corp.*, 145 F.3d 986, 991 (8th Cir. 1998) ("[T]he Supreme Court has held that 'the burden of establishing a prima facie case of disparate treatment is not onerous.'"). Accordingly, the Court will assume without deciding that Plaintiff established a prima facie case of age discrimination. *See, e.g., Loeb*, 537 F.3d 872 (assuming without deciding that the plaintiff in ADEA case met prima facie case).

## 2. Legitimate Reason for Termination

The Court next considers Rainbow's offered explanation for terminating Plaintiff's employment. Rainbow indicates that it terminated Plaintiff's employment because it believed Plaintiff was involved in workplace violence with a fellow employee after having previously been warned about horseplay in the workplace. "Both actual violence against fellow employees and threats of violence are legitimate reasons for terminating an employee." *Clark v. Runyon*, 218 F.3d 915, 919 (8th Cir. 2000) (citing *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560 (8th Cir. 1996)). The Court determines that Rainbow has set forth a legitimate, nondiscriminatory justification for Plaintiff's termination. Therefore, the burden shifts back to Plaintiff to show that Rainbow's explanation is pretext for age discrimination.

## 3. Pretext

"Meeting the burden under this third step is more difficult for a plaintiff than at the prima facie stage because, here, evidence of pretext and discrimination are viewed in the light of the employer's justification." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1019 (8th Cir. 2008); *see also Hammer*, 383 F.3d at 727 (noting that "the factual inquiry proceeds to a new level of specificity" after the defendant rebuts the prima facie case). In order to avoid summary judgment in favor of Rainbow at this third step, Plaintiff must present sufficient evidence to create a genuine issue of fact that Rainbow's reason for his termination is pretextual and that the real reason Plaintiff was fired was his age.

To convince the Court to reject Rainbow's explanation as pretext, Plaintiff has presented documents which include a copy of his December 2004 performance evaluation, copies of documents from the Department of Labor's decision awarding unemployment insurance benefits to Plaintiff, and a copy of a Performance Agreement signed by Rainbow employee Jeff Townsend on May 17, 2004.

Plaintiff urges that he received a favorable performance review by Rainbow in December 2004, and this indicates his age must have been the reason for his termination. The performance evaluation includes some somewhat favorable remarks, but it also reflects concerns with Plaintiff's performance, such as his failure to use his time efficiently. Whether the 2004 evaluation is favorable or unfavorable, the reason offered for Plaintiff's termination in February 2005 does not contradict anything in the earlier performance evaluation, and the Court finds that the performance review is insufficient to raise an issue of fact regarding the reason for Rainbow's termination decision in February 2005.

South Dakota law provides that findings of fact, conclusions of law, decisions or final orders of the South Dakota Department of Labor in unemployment compensation matters may not be used as evidence "in any separate or subsequent action or proceeding between an individual and the individual's present or former employer brought before an arbitrator, court or judge of this state or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts." SDCL § 61-7-24. Even if the Court were to consider the Department of Labor documents submitted by Plaintiff[4], they are not enough to raise a question of fact regarding Rainbow's reasons for terminating Plaintiff. The only issue addressed by the Department of Labor was whether Plaintiff was fired for work-related "misconduct" as that term is defined for purposes of unemployment compensation benefits.[5] The issue in this age discrimination case is not whether

---

[4] Plaintiff submitted only three pages of documents relating to his unemployment insurance claim, not the entire file.

[5] The South Dakota Supreme Court has noted that some conduct may not amount to the type of misconduct that would preclude payment of unemployment compensation, but it is enough to

12

Plaintiff in fact violated Rainbow's policy against horseplay or workplace violence, but rather whether Rainbow's termination decision was a pretext for age discrimination. The Department of Labor's decision in the context of unemployment insurance benefits is not evidence that Rainbow's concerns about Plaintiff's work-related behavior were not legitimate and genuine. This Court's inquiry is not whether Rainbow's decision was correct or wise but only whether Rainbow's concerns were the real reasons for Plaintiff's termination and not a pretext for age discrimination. *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 859 (8th Cir. 2004); *see also Arnold v. Nursing and Rehabilitation Center at Good Shepherd, LLC*, 471 F.3d 843, 847 (8th Cir. 2006) ("[E]ven if an employer fires an employee based upon a mistaken belief, the employee still must offer some evidence that [illegal] animus was at the root of the termination.") (quoting *Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005)). Accordingly, the fact that the Department of Labor did not find misconduct by Plaintiff as defined by South Dakota unemployment insurance law does not support a finding that Plaintiff's age was the reason for his termination.

Plaintiff rebuts Rainbow's reason for his termination by claiming Rainbow treated him less favorably than another similarly situated employee outside of Plaintiff's protected class. He claims that Jeff Townsend, a younger employee, was allowed to "complete" his performance agreement. But Plaintiff fails to show that he was "similarly situated in all relevant respects" to Townsend. [6] *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005). To be probative of pretext, the alleged misconduct of other employees must be of "comparable seriousness." *Id.* (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972-73 (8th Cir.1994)). There is no showing that Townsend committed the same acts as Plaintiff. *See Hervey v. County of Koochiching*, 527 F.3d 711, 720 (8th Cir.2008) ( "[T]he individuals used for comparison must have dealt with the same supervisor, have

---

justify termination of employment. *See, e.g., In re White*, 339 N.W.2d 306 (1983); *see also Kleinsasser v. City of Rapid City*, 440 N.W.2d 734, 737 (S.D. 1989) (standard for determining whether misconduct rises to level justifying employee's discharge is lower than that for determining whether employee's misconduct will deprive him of unemployment compensation).

[6]Furthermore, Plaintiff provides the Court with no information as to Townsend's age, or the circumstances surrounding his misconduct and the performance agreement he signed.

been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.") (quoting *Clark v. Runyon*, 218 F.3d at 918). Because Plaintiff has not shown that he was "similarly situated in all relevant respects" to Townsend, he has failed to raise a triable question of fact as to pretext.

Plaintiff attempts to discredit Rainbow's justification for his termination because Paulsen's statement following the workplace altercation does not mention that Plaintiff touched Paulsen, and Plaintiff denies touching Paulsen. Plaintiff does not deny that two other employees gave statements indicating that Plaintiff may have touched Paulsen. Rainbow had documented concerns about Plaintiff's performance and conduct as late as February 3, 2005 when Plaintiff had to be warned to stop throwing things and otherwise engaging in horseplay. Plaintiff offered no evidence that Rainbow's concerns about his behavior were fabricated or that it was unreasonable for Rainbow to consider these concerns when deciding the appropriate discipline for Plaintiff after the incident with Paulsen. Even if the Court could determine that Plaintiff's version of the altercation is accurate, that Plaintiff was completely innocent in the altercation, and that Rainbow's investigation or decision to terminate was not "wise," "that is not a consideration for the [Court] in this inquiry." *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1137 (8th Cir. 2006) (citation omitted). The Court is not to "sit as a super-personnel department and second guess business decisions." *Id.* (citation omitted).

The documents submitted by Plaintiff indicating that he reported the incident with Paulsen to the police and that criminal charges were brought against Paulsen as a result do not raise an inference that Rainbow terminated Plaintiff because of his age.

Finally, Plaintiff asserts that he should have been allowed 30 days to "complete" his Performance Agreement.[7] Even if that is true, it is not proof Rainbow terminated Plaintiff's employment based on his age.

---

[7] The Performance Agreement signed by Plaintiff states that it will be in place "indefinitely."

14

The fact that the same person who hired Plaintiff when he was 60 years old also was involved in the decision to terminate his employment one and a half years later undercuts Plaintiff's claim that he was terminated because of his age. *See, e.g., Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 175 (8th Cir. 1992) ("It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later.") This, as well as the lack of evidence of discriminatory animus, favors summary judgment for Rainbow.

Plaintiff cannot avoid summary judgment by merely criticizing Rainbow's decision to terminate his employment. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir.1995). Rather, Plaintiff must produce evidence indicating that discrimination was the true reason for Rainbow's actions. *Id.* He has failed to do so. Viewing the record in the light most favorable to Plaintiff, there is no affirmative evidence indicating that Rainbow's termination decision was based on Plaintiff's age. Accordingly, Plaintiff cannot establish pretext, and the Court determines that summary judgment is warranted on Plaintiff's claim. *See Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001) (requiring affirmative evidence that adverse employment decision was based on age); *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir.1999) (to defeat summary judgment, plaintiff "must present affirmative evidence [of age discrimination,] not simply contend that a jury might disbelieve [defendant's] evidence."). Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted.

Dated this 12th day of May, 2010.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY _____
(SEAL)      DEPUTY